# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

DUSTY BENJAMIN,

      Plaintiff,

    v.

FRANK BISIGNANO,
Commissioner of Social Security,

      Defendant.

_____/

Case No. 1:25-cv-01687-JLT-SKO

FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED AND THE FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY BE AFFIRMED

(Doc. 9)

14-DAY DEADLINE

## I.    INTRODUCTION

Plaintiff Dusty Benjamin ("Plaintiff") seeks judicial review of a final decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") terminating his previously granted disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). (Doc. 1.)   The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

For the reasons set forth below, the undersigned recommends that Plaintiff's motion for summary judgment be denied, and that the final decision of the Commissioner be affirmed.

---

[1] The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

## II.  BACKGROUND

Plaintiff was born in 1981 and was 42 years old on the date he was determined no longer disabled.  (AR 28.)  He has at least a high school education.  (AR 28, 135.)  Plaintiff has no past relevant work.  (AR 28.)

### A.  Relevant Evidence of Record[2]

From December 2022 through January 2025, Plaintiff attended medical appointments approximately 13 times.  (AR 462–545, 631–686.)  These visits entail treatment for abdominal pain (AR 462–69), sinus issues (AR 470–77), ear pain (AR 478–86), lower urinary tract issues and related laboratory test results (AR 487–92, 493–501), rectal discomfort (AR 493–501), dizziness (AR 493–501, 520–26), skin infection (AR 493–501), laboratory results of blood testing (AR 502–509), lightheadedness (AR 510–19), itchy ears (AR 510–19), sleep apnea (AR 510–19), pre-operation clearance for gallbladder surgery (AR 527–35), hypertension medication refill (AR 631–37), hemorrhoids (AR 631–37), chest pain (AR 638–45), pain medication refill (AR 510–19, 646–53), depression and anxiety (AR 655–68), and groin rash (AR 669–80).

During one of these visits, in March 2023, Plaintiff requested a prescription for ibuprofen (600 mg) and gabapentin (300 mg) for chronic back pain.  (AR 510–19.)  It was noted that he is allergic to Tramadol.  (AR 514.)  His pain was described as a "0/10."  (AR 515.)  In January 2024, Plaintiff requested refills of this medication, which he indicated he uses "sparingly" for chronic low back pain and was tolerating it "well."  (AR 646, 651.)  Plaintiff reported that his pain was a "8/10," and was assessed with "Chronic bilateral low back pain, unspecified whether sciatica present."  (AR 650, 651.)  Plaintiff complained of back pain in June 2024 at a medication refill visit.  (AR 633.)  At the remaining visits described above, Plaintiff reported his pain at a "2/10" (AR 466), "1/10" (AR 497), or a "0/10" (AR 474, 483, 506, 523, 634, 674), and he either often specifically denied back pain (AR 465, 531, 642) or did not mention it as a symptom (AR 473, 482, 489, 496, 505, 514, 522, 673).  He also denied any gait disturbance, in December 2022.  (AR 531.)

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

**B.      Plaintiff's Statement**

In December 2023, Plaintiff completed a "Pain Questionnaire," in which he complained of pain that is primarily in his lower back, but stated that he also occasionally gets shooting pains down his leg, occasionally numbness in his toes, and occasionally mid to upper back pain.  (AR 303.)  He reported that pain occurs often many times throughout a typical day and some days are worse than others.  (AR 303.)  According to Plaintiff, his pain is exacerbated by standing or sitting for extended periods of time and "basically almost any type of physical activity."  (AR 303.)  He reported that when he experiences back pain, he must lie down.  (AR 304.)  According to Plaintiff, lying down is the "only thing that really helps bring relief," and he reported that 80% of his day is spent lying down.  (AR 304.)  He stated that pain medication helps "a little" and he also uses heat and ice to treat his back pain.  (AR 304.)

**C.     Administrative Proceedings**

Plaintiff was found entitled to DIB as of July 16, 2019, in an agency determination on May 14, 2021.  (Administrative Record ("AR") 17, 81, 93, 104.)  On May 8, 2024, after conducting a continuing disability review, the SSA determined Plaintiff was no longer disabled since May 7, 2024, and issued him a notice of disability cessation.  (AR 17, 118–22.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 127–33.)  The ALJ conducted a hearing on April 17, 2025.  (AR 64–80.)  Plaintiff appeared at the telephonic hearing with his attorney and testified as to his allegedly disabling conditions.  (AR 70–75.)  A Vocational Expert ("VE") also testified at the hearing.  (AR 75–80.)

**1.      Plaintiff's Testimony**

At the hearing, Plaintiff testified that he cannot work because he cannot stand more than 10–15 minutes without needing to switch positions.  (AR 71.)  He can sit in a soft chair for up to two hours.  (AR 71.)  Plaintiff testified he cannot do any heavy lifting, bending, or twisting.  (AR 71.)  His doctor told him not to lift more than 15 pounds, but 10 pounds "feels like a lot."  (AR 74–75.)

Plaintiff testified that his anti-inflammatory medication makes the back pain "more tolerable" but does not improve functionality.  (AR 72.)  He tried a few months of physical therapy but did not "show any signs of improvement."  (AR 72.)  Plaintiff testified that he was "told there was a

possibility of considering surgery in the future," but that "there would be risks and might need multiple surgeries and there was no guarantee." (AR 73.) On a typical day, he brushes his teeth, eats cereal, sits in a recliner, uses ice and heat on his back, walks around the house for 10–15 minutes, watches television, eats dinner, and takes a shower. (AR 73–74.)

### 2.    Vocational Expert's Testimony

The ALJ asked the VE to consider a person of Plaintiff's age, education, and past work history. (AR 76.) The VE was also to assume this person can perform work at the medium exertional level as defined by the regulations except he: can occasionally climb ladders, ropes or scaffolds; frequently climb ramps and stairs; can frequently balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to hazards and atmospheric conditions; and cannot perform work that requires fine visual acuity. (AR 76.) The VE testified that such a person could perform a representative sample of medium exertional jobs in the national economy, such as change house attendant, Dictionary of Operational Titles (DOT) code 358.687-010 with a specific vocational preparation (SVP)[3] of 2; hospital cleaner, DOT code 323.687 010 with a SVP of 2; and dining room attendant, DOT code 311.677-018 with a SVP of 2. (AR 76.) When changing the exertional level in the first hypothetical from medium to light in a second hypothetical, the VE testified that such a person could perform the representative jobs of housekeeping cleaner, DOT code 323.687-014 with a SVP of 2; collator operator, DOT code 208.685-010 with a SVP of 2; and school bus monitor, DOT code 372.667-042 with a SVP of 2. (AR 76–77.) With the additional limitations in a third hypothetical that the second hypothetical person can understand, remember, and carry out simple instructions, the VE testified that all of the light jobs previously identified would be available. (AR 77.) The VE further testified that a person can still be employable if they are absent less than one day per month, up to five months per year, and that being off task more than 9% or needing one unscheduled 20-minute break during the workday are each work preclusive. (AR 77–79.)

---

[3] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

**D.    The ALJ's Decision**

In a decision dated May 5, 2025, the ALJ found that Plaintiff's disability, as defined by the Act, had ended.  (AR 17–29.)  In determining whether Plaintiff continued to be disabled, the ALJ conducted the eight-step disability analysis set forth in 20 C.F.R. § 404.1594. (AR 19–29.)  The ALJ decided that Plaintiff had not engaged in substantial gainful activity through the date of the decision (step one). (AR 19.)  At step two, the ALJ found that since the cessation date of May 7, 2024, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 19–22.)  The ALJ further found that medical improvement occurred on May 7, 2024 (step three), and the medical improvement was related to the ability to work (step four).  (AR 22–23.)

Because Plaintiff's medical improvement was related to his ability to work, the ALJ skipped step five and proceeded to step six of the evaluation.[4]  (AR 18, 23.)  At step six, the ALJ found that since the cessation date of May 7, 2024, Plaintiff continued to have a severe impairment or a combination of impairments.  (AR 23.)  The ALJ assessed Plaintiff's residual functional capacity (RFC)[5] at step seven and determined that, based on the impairments since the cessation date of May 7, 2024, Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§] 404.1567(b) except he can occasionally climb ladders, ropes, or scaffolds and can frequently climb ramps and stairs, balance as that term is defined in the Dictionary of Occupational Titles (DOT), stoop, kneel, crouch, and crawl, and must avoid concentrated exposure to hazards and atmospheric conditions.  He cannot perform work that requires near visual acuity.

(AR 23–28.)  Although the ALJ recognized that Plaintiff's impairments "could have reasonably been expected to produce the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the objective medical evidence and other evidence for the reasons

---

[4] *See* 20 C.F.R. § 404.1594(f)(4).

[5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

explained in this decision." (AR 24–25.)

The ALJ determined that Plaintiff had no past relevant work but that, given his RFC, he could perform a significant number of jobs in the national economy (step eight), including housekeeping cleaner, collator operator, and school bus monitor. (AR 28–29.) The ALJ ultimately concluded Plaintiff's disability ended on May 7, 2024, and he has not become disabled again since that date. (AR 29.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on September 24, 2025. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.    LEGAL STANDARD

The SSA may terminate disability benefits upon finding that the claimant's condition has medically improved, and the claimant is now able to engage in substantial gainful activity. 42 U.S.C. § 423(f)(1). "To determine whether there has been medical improvement, an administrative law judge (ALJ) must compare the current medical severity of the claimant's impairments to the medical severity of the impairment at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled." *Attmore v. Colvin*, 827 F.3d 872, 873 (9th Cir. 2016) (quotations omitted); *see also* 20 C.F.R. § 404.1594.[6]  Medical improvement is defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1).  There is no presumption of continuing disability; that is, "a disability determination must be made 'on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled.'" *Lambert v. Saul*, 980 F.3d 1266, 1276 (9th Cir. 2020) (quoting 42 U.S.C. § 423(f)).

An ALJ's decision to terminate disability benefits will be upheld if it is supported by substantial evidence in the record and if the correct legal standards were applied. *Stout v. Comm'r,*

[6] As described above (*see* Section II.D), the Social Security regulations prescribe an eight-step framework for determining whether a claimant is no longer disabled. 20 C.F.R. § 404.1594(f)(1)–(8).

*Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court will not affirm on grounds upon which the ALJ did not rely.  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

Finally, the court "may not reverse an ALJ's decision on account of an error that is harmless."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout*, 454 F.3d at 1055–56).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'"  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.       DISCUSSION

Plaintiff contends that in making the determination that his disability ended, the ALJ failed to articulate clear and convincing reasons for discounting his testimony regarding his subjective complaints. (Doc. 9.)  The Commissioner responds that the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations. (Doc. 14.)  The undersigned agrees with the Commissioner.

### A.       The ALJ Properly Found Plaintiff Less Than Fully Credible

#### 1.       Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an

ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection. *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

### 2.    Analysis

As noted above, the ALJ found Plaintiff's impairments "could have reasonably been expected to produce the alleged symptoms," but rejected Plaintiff's subjective testimony as "not entirely

consistent with the objective medical evidence and other evidence . . . ." (AR 24–25.) Since the ALJ found Plaintiff's "medically determinable impairments could have reasonably been expected to produce the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

Plaintiff argues, citing Ninth Circuit authority, that "providing a summary of medical evidence . . . is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." (Doc. 9-1 at 4 (citing *Lambert*, 980 F.3d at 1278 (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015))).) However, in *Lambert*, the Ninth Circuit held that its "cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Id.* at 1277. Moreover, the ALJ did not merely provide a summary of the medical evidence. Unlike in *Lambert* (and *Brown-Hunter*), the ALJ here detailed Plaintiff's complaints of chronic back pain, then contrasted that testimony with opposing evidence from the medical record showing Plaintiff's conservative treatment, frequent self-reported pain scores of "0/10," infrequent mentions of back pain, and a lack of "physical exam signs to suggest he has any functional limitations." (AR 24, 25, 26). *See Lambert*, 980 F.3d at 1277 (""We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [claimant's] pain testimony where, as here, the ALJ never identified which testimony she found not credible, and never explained which evidence contradicted that testimony.") (quoting *Brown-Hunter*, 806 F.3d at 494). The identification of specific allegations and reasons why the evidence undermines those allegations—described in further detail below–permits the undersigned to review the ALJ's reasoning. Plaintiff's argument is therefore unavailing. *See, e.g., Guthrie v. Kijakazi*, No. 21-36023, 2022 WL 15761380, at *1 (9th Cir. Oct. 28, 2022) (rejecting the plaintiff's argument that "the ALJ legally erred by failing to clearly identify which portions of his symptom testimony she rejected and failing to link her rejection of that testimony to the record evidence," where the ALJ "sufficiently explained her reasons for discounting [the plaintiff's] symptom testimony, and we can easily follow her reasoning and meaningfully review those reasons.") (citing *Kaufman v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (stating that the court considers "the ALJ's full explanation" and the "entire record")); *Mazon v. Comm'r of Soc. Sec.*, No. 1:22-cv-00342-SAB, 2023 WL 3177797, at *7 (E.D.

Cal. May 1, 2023) (the ALJ's sequence of summarizing evidence followed by giving specific findings followed a conventional organization for the ALJ's decision writing which is sufficiently clear for judicial review).

The undersigned finds that the ALJ identified at least two specific reasons supported by substantial evidence for discrediting Plaintiff's testimony:

a.   Conservative Treatment

First, the ALJ found that Plaintiff's treatment for back pain has been "conservative." (AR 26.) Specifically, the ALJ noted Plaintiff takes medications such as ibuprofen and gabapentin "sparingly" and there are "no referrals to specialists such as orthopedics or neurology." (AR 26.) Plaintiff does not dispute this evidence, which is supported by the record. (*See* AR 510–19, 646, 651.) Plaintiff   instead asserts the ALJ's characterization of his treatment as conservative is not supported by the record because he "previously had a surgery" and "another sugary [*sic*] is not guaranteed to help," citing the unpublished memorandum disposition of *Richotte v. Astrue*, 281 F. App'x 757 (9th Cir. 2008).[7]  (Doc. 9-1 at 6.)  While *Richotte* may stand for the proposition that surgery is not conservative treatment, there is no evidence that Plaintiff underwent surgery to treat his back pain. The only evidence that Plaintiff "previously had a surgery" is the laparoscopic removal of his gallbladder to remove polyps in December 2022 (AR 432–54), and there is no indication that this procedure was related in any way to his complaints of back pain. *Richotte* is inapposite.

Based on the above-described substantial evidence of conservative treatment for Plaintiff's back pain, the ALJ was therefore entitled to discount Plaintiff's credibility. *See Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) (evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ may properly rely on the fact that only conservative treatment has been prescribed). *See also Debra S. v. Kijakazi*, No. 20-CV-03551-TSH, 2022 WL 6791445, at *8 (N.D.

---

[7] Plaintiff also appears to suggest that his treatment was not conservative because he is "allergic to another primary pain killer, Tramadol." (Doc. 9-1 at 6.) There is no evidence, however, that any provider attempted to prescribe Tramadol— or any medication other than ibuprofen and gabapentin—to treat his back pain. The fact that Plaintiff is allergic to Tramadol where none was recommended does not undermine the ALJ's conclusion that his treatment was conservative in nature. *See, e.g.*, *Sultan v. Bisignano*, No. 3:25-CV-00535-CLB, 2026 WL 915256, at *8 (D. Nev. Apr. 3, 2026) (upholding the ALJ's reliance on conservative treatment to discount plaintiff's testimony where there was "no evidence in the record showing that medical providers recommended more aggressive treatment options.").

Cal. Oct. 11, 2022) ("Here, the ALJ considered Plaintiff's conservative treatment, such as physical therapy, acupuncture, and prescribed medications such as ibuprofen, flexeril, and gabapentin."); *Simmons v. Colvin*, No. EDCV 13-1346 AGR, 2014 WL 2215863, at *5 (C.D. Cal. May 29, 2014) (affirming ALJ's conservative treatment finding where plaintiff took, at various times, no medication, Tylenol Extra Strength, prescription-strength Tylenol, and ibuprofen 800 mg and gabapentin 300 mg, which took away some of the pain, and used Icy-Hot).

b.    Medical Evidence

Second, the ALJ observed that Plaintiff "most often" reported his pain at "0/10," with "infrequent" mentions of back pain and "no physical exam signs to suggest he has any functional limitations." (AR 26.) While "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain, a lack of medical evidence "is a factor that the ALJ can consider in [their] credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 680, 681 (9th Cir. 2005). *See also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan*, 169 F.3d at 600. Stated differently, "[a]lthough the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, it is one factor which may be considered with others." *Salas v. Colvin*, No. 1:13-cv-00429-BAM, 2014 WL 4186555, at *6 (E.D. Cal. Aug. 21, 2014) (citations omitted).

The ALJ's recitation of evidence showing infrequent complaints of back pain and frequent reported pain levels of "0/10" is supported by the record (*see* AR 473, 474, 482, 483, 489, 496, 505, 506, 514, 522, 523, 634, 673, 674), and Plaintiff again does not dispute it. Instead, he asserts that his reports of "0/10" pain are "essentially the same" as a treatment provider's notation of "no acute distress," which is "not helpful." (Doc. 9-1 at 6–7.) This argument is not persuasive. Plaintiff cites no legal authority equating a self-reported "0/10" pain rating with a notation by a treater of "no acute distress," and the undersigned has not found any.

Plaintiff further suggests that the ALJ should have "questioned" Plaintiff about the "contradiction" between his oft-reported "0/10" pain rating and his subjective complaints of debilitating back pain, citing cases discussing the ALJ's duty to develop the record. (Doc. 9-1 at 7.) However, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous

11

evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Ford,* 950 F.3d at 1156; *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  Contradictory evidence is not the same as ambiguous evidence.  The ALJ is tasked with resolving the former, while the latter triggers the duty to develop.  *See Torres v. Comm'r of Soc. Sec.*, No. 2:19-CV-1246-DMC, 2020 WL 5820610, at *8 (E.D. Cal. Sept. 30, 2020) (finding that, "[w]hile the various opinions are contradictory and, thus, subject to the ALJ's interpretation to resolve the conflict, none of the opinions themselves are ambiguous or otherwise unclear . . . . Simply because various opinions present a conflict does not mean any particular opinion is ambiguous such as would trigger the Commissioner's duty to develop the record."); *see also Zargi v. Comm'r of Soc. Sec.*, No. CIV S-08-1677-CMK, 2009 WL 1505311, at *19 (E.D. Cal. May 27, 2009) ("[I]nconsistency is not the same as ambiguity. Inconsistent evidence is that which is not compatible with a particular explanation.  In this case, the evidence . . . was not ambiguous, which means incapable of explanation," and ALJ was able to resolve inconsistencies without implicating the duty to develop the record).

At bottom, Plaintiff's disagreement lies with the ALJ's interpretation of the medical evidence, yet it is not within the province of this Court to second-guess the ALJ's reasonable interpretation of that evidence, even if such evidence could give rise to inferences more favorable to Plaintiff.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)).  The undersigned therefore finds the ALJ's conclusion that the evidentiary record does not support, and in fact undermines, Plaintiff's subjective statements is supported by substantial evidence.  The ALJ's determination that Plaintiff's complaints are inconsistent with the medical evidence is therefore another clear and convincing reason for discounting his subjective symptom testimony.  *See Molina*, 674 F.3d at 1113 (concluding that the ALJ properly discredited claimant testimony based on inconsistencies with objective medical evidence); 20 C.F.R. § 404.1529(c)(3).

In sum, the undersigned finds that the ALJ provided at least two clear and convincing reasons, supported by substantial evidence, to discredit Plaintiff's reports regarding the extent of his limitations.[8]

_____

[8] Even if the ALJ had erred in evaluating his subjective symptom testimony, however, Plaintiff has not shown such error would be harmful.  Despite bearing the burden of proving his disability, *see Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999), Plaintiff does not specify what additional functional limitations resulting from back pain were not accounted

## V.        FINDINGS AND RECOMMENDATIONS

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.        Plaintiff's motion for summary judgment (Doc. 9) be DENIED;

2.        The final decision of the Commissioner of Social Security be AFFIRMED; and

3.        The Clerk of Court be DIRECTED to enter judgment in favor of Defendant Frank Bisignano, Commissioner of Social Security, and against Plaintiff Dusty Benjamin, and to CLOSE this action.

These findings and recommendations are submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of these recommendations, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The District Judge will review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __**April 22, 2026**__                        ____/s/ *Sheila K. Oberto*____
                                                      UNITED STATES MAGISTRATE JUDGE

---

for in the ALJ's RFC assessment or otherwise identify how the ALJ's purported error was not inconsequential to the ultimate nondisability determination, other summarily   *See McLeod v. Astrue,* 640 F.3d 881, 887 (9th Cir. 2011) ("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm."). *Cf. Ruth F., v. Comm'r of Soc. Sec.,* No. C20-5603-MAT, 2021 WL 3772067, at *5 (W.D. Wash. Aug. 25, 2021) ("[A]ny error in the ALJ's evaluation of Plaintiff's subjective testimony would be harmless because the ALJ accounted for Plaintiff's alleged exertional limitations in the RFC.").